IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEITER JOSEPH BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 22-cv-1022-MPT |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM</u>**[1]

Presently before the court are plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff requests judgment under sentence four of 42 U.S.C. § 405(g), reversing the Commissioner's final decision and remanding for further administrative proceedings.[3] For the following reasons, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

**I.   BACKGROUND**

This action arises from the denial of Deiter Joseph Brown's ("plaintiff") claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the

---

[1] Following the parties' consent to proceed before a magistrate judge, this judge was assigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and FED. R. CIV. P. 73 on November 15, 2022. *See* D.I. 11.

[2] D.I. 12; D.I. 16. Briefing is found at D.I. 13 (plaintiff's opening brief) and D.I. 17 (defendant's opening/answering brief). On January 31, 2022, plaintiff filed a Notice that he rests on his opening brief. *See* D.I. 18.

[3] D.I. 13 at 16.

"Act").[4]  Plaintiff protectively filed his benefits application for SSI on February 11, 2023.[5]  He alleged disability beginning January 9, 2020 due to the following conditions: attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, major depression, anxiety disorder, diabetes, and psychotic feature.[6]  His claim was denied initially on August 27, 2020, and upon reconsideration on February 19, 2021.[7]  Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ").[8]

The ALJ held a hearing on July 29, 2021, at which he heard testimony from plaintiff, who was represented by counsel, and a vocational expert ("VE").[9]  The ALJ issued a decision on August 31, 2021, concluding plaintiff was not under a disability within the meaning of the Act for the relevant period and denying plaintiff's claim for SSI.[10]  The ALJ found that, while plaintiff could not perform his past work, he could perform a full range of work at all exertional levels but with certain nonexertional limitations.[11]

Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review the decision, making it a final decision reviewable by this court.[12]  Plaintiff filed

---

[4] The court refers to the record from the administrative proceeding (D.I. 9) as "Tr."  The record is consecutively paginated and is referred to as "Tr. at ___."
[5] Tr. at 15.
[6] *Id.* at 197, 220.
[7] *Id.* at 15, 77, 86.
[8] *Id.* at 15, 118.
[9] *Id.* at 30-52.  The hearing was held telephonically "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." *Id.* at 15.
[10] *Id.* at 15-25.
[11] *Id.* at 24-25.
[12] *Id.* at 1-6.

this action on August 2, 2022.[13]

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[14] If no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[15]

This standard does not change merely because there are cross-motions for summary judgment.[16] Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[17]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[18]

### B. Court's Review of the ALJ's Findings

The Commissioner must follow a five-step sequential analysis to determine whether a person is disabled for purposes of qualifying for SSI.[19] The Commissioner

---

[13] D.I. 2.
[14] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).
[15] *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (citing Fed. R. Civ. P. 56(c)).
[16] *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).
[17] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[18] *Krupa v. New Castle Cnty.*, 732 F. Supp. 497, 505 (D. Del. 1990).
[19] 20 C.F.R. § 416.920(a).

must determine whether the applicant: (1) is engaged in substantial gainful activity; (2) has a "severe" medical impairment; (3) suffers from an impairment that meets a listing; (4) has the residual functional capacity ("RFC") to perform past relevant work; and (5) can perform any other work existing in significant numbers in the national economy.[20]

A reviewing court is limited to determining whether the Commissioner's factual findings are supported by "substantial evidence."[21]

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla."[22]

In reviewing whether substantial evidence supports the Commissioner's findings, the court may not "re-weigh the evidence or impose [its] own factual determinations."[23] The reviewing court must defer to the ALJ and affirm the Commissioner's decision, even if it would have decided the factual inquiry differently, so long as substantial evidence supports the decision.[24]

The reviewing court must also review the ALJ's decision to determine whether

---

[20] *Burns v. Barnhart*, 312 F.3d 113, 118-19 (3d Cir. 2002) (citing 20 C.F.R. § 416.920).
[21] 42 U.S.C. § 405(g).
[22] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted); see also *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) ("Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").
[23] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).
[24] *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

the correct legal standards were applied.[25] The court's review of legal issues is plenary.[26]

III. DISCUSSION

The ALJ found plaintiff had the following severe impairments: bipolar disorder, generalized anxiety disorder, social phobia, and ADHD.[27] The ALJ found plaintiff's diabetes, hyperlipidemia, obesity, a right shoulder impairment, and an ankle impairment were not "severe" impairments as defined in the regulations.[28] The ALJ posed the following hypothetical question to the VE:

> [C]onsider an individual of the claimant's age, education, and work history, who can perform work at all exertional levels, performing unskilled tasks, with the reasoning level of 1 or 2. With occasional changes in a routine work setting and work processes. Occasional interaction with coworkers that requires no teamwork or tandem tasks, and no interaction with the public. Could this person perform the claimant's past work?[29]

The VE responded the hypothetical person could not.[30] The ALJ then asked if there would be any jobs that person could perform.[31] The VE responded such person would be able to perform jobs at the light and medium exertional level including: crate liner, marker, and router.[32]

The ALJ then asked the VE: "If an individual would be off task 15 percent or more of the workday . . . [or] if the individual were to miss two or more days of work per

---

[25] *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).
[26] *Id.*
[27] Tr. at 17.
[28] *Id.* at 17-18.
[29] *Id.* at 47.
[30] *Id.*
[31] *Id.*
[32] *Id.* at 47-48.

5

month, how would that affect their employability?"[33]  The VE responded that the specified time off task and amount of absences would each be work preclusive.[34]

Finally, the ALJ asked if the VE saw "any conflict between the limitations that I gave you and the requirements of the jobs you cited," to which the VE responded "No, your Honor."[35]

Plaintiff's counsel then sought clarification of the ALJ's hypothetical, which did not mention the frequency of interaction with supervisors, with regard to the jobs listed by the VE.[36]  The VE stated supervisor interaction would be occasional, as with the ALJ's hypothetical describing occasional interactions with coworkers.[37]  Plaintiff's counsel then asked, instead of occasional interaction with coworkers, would the listed jobs be available if a person could have no interaction with, or be in the proximity of, coworkers.[38]  The VE opined that limitation would preclude all work.[39]  Plaintiff's counsel returned to a person's interaction with supervisors in the VE's listed jobs, and asked whether interaction would be more than occasional during the probationary period, and how long that typically lasts.[40]  The VE stated that interaction with supervisors would not necessarily be increased during the typical thirty to sixty day probationary period.[41]  The VE agreed that inability to competently perform a simple task after the probationary

---

[33] *Id.* at 48.
[34] *Id.*
[35] *Id.*
[36] *Id.* at 49.
[37] *Id.*
[38] *Id.* at 49-50.
[39] *Id.* at 50.
[40] *Id.*
[41] *Id.* at 50-51.

period would preclude continued employment.[42] Finally, plaintiff's counsel asked what an employer's tolerance would be if the hypothetical individual had a negative verbal exchange with either a coworker or supervisor.[43] The VE responded it would depend on the severity of the altercation.[44] Generally, threats would result in immediate termination, calm disagreements expressed appropriately but still not cooperating with the other person would result in written or verbal warnings, but employment would not be maintained with repeated non-cooperation.[45]

In his decision, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is limited to unskilled work with a reasoning level of 1 or 2. He can tolerate occasional changes in routine work setting and work processes. He can have occasional interaction with coworkers that requires no teamwork or tandem tasks, and no interaction with the public.[46]
>
> * * * * *
>
> After considering the evidence of record, I find that the claimant's medically determinable impairments could have reasonably been expected to produce the alleged symptoms. However, in evaluating the claimant's symptoms under the factors described in 20 CFR 416.929(c)(3) and Social Security Ruling 16-3p, I find the claimant's allegations as to the nature, intensity, persistence, and limiting effects of those symptoms are not fully substantiated by the medical signs, laboratory findings and other evidence of record [for the reasons explained in this decision.][47]

The ALJ relied upon the VE's assessments in his final determination and

---

[42] *Id.* at 51.
[43] *Id.*
[44] *Id.*
[45] *Id.* at 51-52.
[46] *Id.* at 20
[47] *Id.*

concluded, considering plaintiff's age, education, work experience, and RFC, he was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, such as crate liner, marker, and router.[48]

Plaintiff's sole argument for remand is that the ALJ rejected the opinions of plaintiff's mental health treating specialists in contradiction to SSA policy and Third Circuit precedent.[49] Plaintiff contends the opinions of his treating physicians Anna Hoier, Psy.D. ("Dr. Hoier") and David Nixon, M.D. ("Dr. Nixon") and "his own description of his symptoms and limitations (1) describe far greater limitations than those in the ALJ's RFC, and (2) meet his burden to prove that he is 'disabled.'"[50] Plaintiff asserts the opinions of his treating physicians are consistent with, and supported by, the evidence and the ALJ did not reasonably find to the contrary.[51]

Defendant contends substantial evidence supports the ALJ's disability determination.[52] Defendant maintains the ALJ reasonably found the opinions of consultative examiner Joseph Keyes, Ph.D. ("Dr. Keyes") and state agency psychologists persuasive and consistent with plaintiff's consultative examination, treatment records, activities, and routine treatment.[53] Defendant also argues the ALJ was reasonable in determining the opinions of Drs. Nixon and Hoier assessing "serious" and "extreme" functional limitations were unpersuasive because they were not

---

[48] *Id.* at 24-25.
[49] D.I. 13 at 2, 9-16.
[50] *Id.* at 11-13.
[51] *Id.* at 13-16.
[52] D.I. 17 at 1.
[53] *Id.* at 2.

supported by plaintiff's treatment and consultative examination.[54]  The court agrees with defendant.

Plaintiff was treated by Drs. Nixon and Hoier at A Center for Mental Wellness, Inc. ("Center for Mental Wellness") during his alleged period of disability, and each submitted opinions stating, *inter alia*, that plaintiff's metal health limitations precluded him from working 40 hours per week without missing more than 2 days of work per month of remaining, or task at least 80% of the workday.[55]  If those opinions were accepted, plaintiff would be disabled.  "[I]t is well established," however, that a physician's statements "are not binding on the ALJ, as opinions as to whether a claimant is disabled or unable to work is reserved for the Commissioner of Social Security."[56]  Moreover, "even if the statements from Plaintiff's physicians were to be considered as opinions, they would not be entitled to controlling weight under the relevant regulations.  For cases . . . filed on or after March 27, 2017, the regulations have eliminated the 'treating physician rule.'"[57]

A plaintiff's RFC is his maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.[58]  This contemplates full-time employment and is defined as eight hours a day, five days per week, or another similar schedule.[59]  The RFC assessment must include a discussion of the individual's

---

[54] *Id.*
[55] D.I. 13 at 6-9 (citing Tr. 721 (Dr. Nixon); Tr. 326 (Dr. Hoier); Tr. 859 (Dr. Hoier)).
[56] *See*, *e.g.*, *Johnson v. KijaKazi*, C.A. No. 21-1919, 2023 WL 2500367, at *1 n.1 (W.D. Pa. Mar. 14, 2023) (citing 20 C.F.R. § 416.920b(c)(3)(i)).
[57] *Id.* (citations omitted).
[58] *See Social Security Ruling* ("SSR") 96-8p.
[59] *Id.*

abilities.[60]  "[T]he ALJ's finding of [RFC] must be accompanied by a clear and satisfactory explanation of the basis on which it rests."[61]

"The record before the ALJ is the touchstone for determining which limitations should be included in an RFC assessment."[62]  "A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC."[63]  The ALJ must consider all the evidence before him when making his RFC determination and must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.[64]

"A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."[65]  An ALJ does not have to include every alleged impairment, but only "a claimant's credibly established limitations."[66]  "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible–the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason."[67]  The ALJ's decision must be accompanied by a clear and satisfactory explanation of the basis on which it rests for this court properly to decide whether the

---

[60] *Id.*; 20 C.F.R. § 416.945; *Hartranft*, 181 F.3d at 359 n.1.
[61] *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001).
[62] *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007).
[63] *Id.*
[64] *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).
[65] *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).
[66] *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).
[67] *Id.* (internal quotation marks omitted).

ALJ's decision is based upon substantial evidence.[68]

If a credibly-established limitation is not included within the hypothetical question, there is a danger that the VE will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation.[69] Remand is required where the hypothetical question is deficient.[70]

The regulations list multiple factors to be considered in evaluating the persuasiveness of that evidence, but emphasize that:

> [t]he factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.[71]

With regard to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s) the more persuasive the medical opinions or prior administrative medical finding(s) will be."[72] Turning to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."[73] If the ALJ finds multiple medical opinions of the same issue are

---

[68] *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981).
[69] *Burns v. Barnhart*, 312 F.3d 113, 122-24 (3d Cir. 2002).
[70] *Rutherford*, 399 F.3d at 554; *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).
[71] 20 C.F.R. § 416.920c(b)(2).
[72] 20 C.F.R. § 416.920c(c)(1).
[73] 20 C.F.R. § 404.920c(c)(2).

11

equally supported and consistent with the record, but not exactly the same, he "will explain how [he] considered the other most important factors in paragraphs (c)(3) through (c)(5),"[74] i.e., relationship with the claimant, specialization, and other factors.[75]

Plaintiff asserts that the ALJ failed to adequately explain his findings as required by 20 C.F.R. § 416.920c, the statutory scheme for analyzing medical opinion evidence in disability claims filed after March 27, 2017.[76]  Plaintiff argues:

> [T]his analysis assumes that, based on the factors of consistency and supportability, more than one opinion can reasonably be found persuasive, even opinions at odds with each other in their conclusions. When this is the case, at the *second step* the ALJ must consider the "most persuasive factors" of:  "relationship with the claimant" (i.e., treating or examining relationship), "specialization," and "other factors" to, in effect, *"break the tie"* to determine which opinion is most persuasive."[77]

An almost identical argument was recently rejected in this circuit by Judge Alan B. Bloch of the United States District Court for the Western District of Pennsylvania.  As here, the plaintiff argued:  "if the ALJ has found multiple opinions to be persuasive, he or she then *'break[s] the tie'* by applying the factors set forth in Section[] . . . 416.920c(b)(3)–relationship with the claimant, specialization, and other factors– to determine which of the 'persuasive' opinions is most persuasive."[78]  Judge Bloch rejected this argument and cogently explained:

> In essence, Plaintiff is contending that the ALJ first makes the binary

---

[74] 20 C.F.R. § 404.920c(b)(3).
[75] 20 C.F.R. §§ 404.920c(c)(3)-(5).
[76] D.I. 13 at 10.
[77] *Id.* (emphasis added) (citing 20 C.F. R. §§ 416.920(c)(3)-(c)(5); *Knecht v. Saul*, No. 3:19-cv-00759, 2020 U.S. Dist. LEXIS 140481, at *19-20 (M.D. Pa. Aug. 6, 2020) (also describing § 416.920c as a two-step process)).
[78] *Skirble v Comm'r of Soc. Sec.*, C.A. No. 21-238, 2022 WL 3586668, at *1 n.1 (W.D. Pa. Aug. 22, 2022) (emphasis added).

decision of whether an opinion is persuasive or not persuasive by applying the two "most important factors" of supportability and consistency, and then applies the remaining factors to separately "rank" the opinions in the order of persuasiveness.  <u>This is simply not consistent with the language of the regulations.</u>

Section[] . . . 416.920c(b) provide[s]:  "We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."  ALJs, therefore, do not simply determine **whether** an opinion is persuasive or not, but rather **how** persuasive it is.  This very clearly contemplates a spectrum of persuasiveness and not merely a "thumbs up" or "thumbs down" on whether an opinion is persuasive.  Moreover, Section[] . . . 416.920c(b)(2) expressly state[s] that supportability and consistency "are the most important factors we consider when we determine **how** persuasive we find a medical source's medical opinions or prior administrative medical findings to be."  (emphasis added).  This is not to say that the remaining factors are not relevant, but simply that they are secondary to supportability and consistency.  In the event that two or more opinions regarding the same issue are "equally" well-supported and consistent with the record, then a more focused analysis of the remaining factors is warranted.  *Id.* at § . . . 416.920c(b)(3).  Again, the regulations do not state that if two or more opinions are supported and consistent with the record that this additional analysis will be triggered, but only if they are **equally** supported and consistent.  This, again, clearly contemplates that ALJs can and will find opinions to be of varying degrees of persuasive in applying Section[] . . . 416.920c(b)(2).[79]

---

[79] *Id.* (first emphasis added).  The analysis in *Skirble* is not contradicted by the *Knecht* opinion cited by plaintiff as support for his two-step "break the tie" argument.  *See Knecht*, 2020 U.S. Dist. LEXIS 140481, at *19-20 ("The ALJ *must explain* in his . . . decision how persuasive he . . . finds a medical opinion based on [supportability and consistency].  20 C.F.R. § 404.1520c(c)(1)-(5).  The ALJ *may, but is not required, to explain* how he considered the remaining factors, *unless* the ALJ finds that two or more medical opinions about the same issues are *both equally well-supported and consistent with the record*, but not identical. 20 C.F.R. § 404.1520c(b)(3)." (emphasis added)).

Many courts in this, and other, circuits have similarly found consideration of supportability and consistency of medical opinions are the only factors an ALJ *must* address.  See, *e.g.*, Moberg *v. Comm'r of Soc. Sec.*, No. 6:19-CV-891-ORL-LRH, 2020 WL 4936981, at *3 (M.D. Fla. Aug. 24, 2020) ("Pursuant to the new regulations, the Commissioner is not required to articulate how he 'considered each medical opinion or prior administrative medical finding from one medical source individually.' 20 C.F.R. § 404.1520c(b)(1).  Courts have found that '[o]ther than articulating his consideration of

13

Here, the ALJ carefully considered the record evidence (including plaintiff's testimony, treatment and medical records, activities of daily living, and medical opinions), thoroughly explained how plaintiff's reasonably supported limitations were accounted for in his RFC, and the reasons plaintiff's alleged disabling limitations were rejected.

The ALJ noted plaintiff's testimony that his is unable to work due to depression, missing too many work days, violent altercations, anxiety-induced difficulty getting to sleep, getting out of bed, and rocking back and forth.[80] The ALJ also noted plaintiff stated he hears voices, suffers from social phobia, paranoia, and panic attacks; and, that he does not regularly interact with anyone other than his mother.[81]

The ALJ found plaintiff's "medically determinable impairments could have reasonably been expected to produce the alleged symptoms[.]"[82] However, because "the nature, intensity, persistence, and limiting effects of those symptoms are not fully substantiated by the medical signs, laboratory findings and other evidence of record[,]" those symptoms affect his "ability to work only to the extent they can reasonably be

---

the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness.' *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing *Mudge v. Saul*, No. 4:18CV693CDP, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019)). *See also Knecht*[,] . . . 2020 WL 4530725, at *7; *Stem v. Comm'r of Soc. Sec.*, No. CV 2:19-725, 2020 WL 4548056, at *2 n.1 (W.D. Pa. Aug. 6, 2020) (citations omitted) ('Consistency and supportability are the only factors ALJs must address in their written opinions.')."); *Smith v. Kihakazi*, CASE NO. 2:20-cv-762-JTA, 2022 WL 3927818, at *3 (Aug. 31, 2022) (citing *Moberg*, 2020 WL 4936981, at *3).

[80] Tr. at 20.
[81] *Id.*
[82] *Id.*

accepted as consistent with the objective medical and other evidence."[83]

The ALJ noted plaintiff's bipolar disorder, generalized anxiety disorder, social phobia, and ADHD diagnoses, his last psychiatric hospitalization for suicidal ideation in 2008, as well as his regular mental health treatment and prescriptions for Lamictal and Trazodone.[84] He found the treatment notes of Drs. Hoier and Nixon reflected "generally mild clinical signs, inconsistent with the degree of functional limitation alleged."[85]

The ALJ noted plaintiff's testimony regarding anxiousness around crowds, two to four weekly bipolar episodes, confrontations with other causing job loss, and history of hospitalizations.[86] The ALJ then discussed Dr. Keyes's evaluation he reported plaintiff exhibiting appropriate behavior and his "[ability] to focus and maintain attention to basic tasks during the evaluation."[87]

The ALJ recounted evidence of plaintiff's activities of daily living, including his testimony that he lives with his elderly mother, helps with housework, shops for groceries, watches the news, reads the Bible, and attends church weekly and AA meetings regularly.[88] Additional evidence indicates plaintiff has no problems with personal care and reports additional activities including: cleaning and doing laundry, going outside five times a week, and managing his finances; but, that he does not cook

---

[83] Tr. at 20-21.
[84] Tr. at 21. According to plaintiff, "Lamictal is an anti-epileptic medication that is also used to delay mood episodes in adults with bipolar disorder (manic depression)" and "Trazodone is an antidepressant." See D.I. 13 at 2, n.2 and 4 n.3 (citing https://www.drugs.com/lamictal.html and https://www.drugs.com/trazodone.html, respectively).
[85] Tr. at 21.
[86] Id.
[87] Id.
[88] Id.

15

or have any friends.[89]  The ALJ found plaintiff's activities of daily living are not entirely consistent with reported limitations interacting with others."[90]

The ALJ also found the medical records do not support plaintiff's alleged degree of functional limitation. He cited treatment notes reflecting "deficits in mood with irritability and anxiety, fair to good concentration, no deficits in memory, no hallucinations, and fair impulse control, inconsistent with the degree of limitation reported," and that "the claimant can be verbally aggressive and exhibits bad judgments with interpersonal interactions."[91]  The ALJ also reiterated Keyes's findings of "no unusual or inappropriate behaviors, a pleasant attitude and demeanor, adequate insight and judgment, grossly intact remote and immediate memory, and . . . [ability] to focus and maintain attention to basic tasks during evaluation."[92]  The ALJ accounted for plaintiff's concentration, anxiety, and difficulty in adapting by limiting him to unskilled work with reasoning level of 1 or 2, and tolerating occasional changes to work setting and processes.[93]  Plaintiff's deficits interacting with others was accounted for with limiting him to occasional interactions with coworkers, and requiring no teamwork, tandem task, or interaction with the public.[94]

Lastly, the ALJ discussed the medical opinions and prior administrative findings. He found the state agency consultant's opinions that plaintiff "can perform simple, routine, repetitive tasks in a stable less stressful environment and can complete tasks

---

[89] Tr. at 21-22.
[90] Tr. at 22.
[91] *Id.* (citations omitted).
[92] *Id.* (citations omitted).
[93] *Id.*
[94] *Id.*

not requiring close interactions with others" persuasive because each was supported by review of the evidence and consistent with the medical records.[95]  Specific support cited was the evidence of no psychiatric hospitalizations since 2008, continued therapy, activities of daily living, and Keyes's report.[96]  Consistent with those opinions were treatment notes reflecting "deficits in mood with irritability and anxiety, fair to good concentration, no deficits in memory, no hallucinations, and fair impulse control[.]"[97]

The ALJ found Keyes's opinion that plaintiff "has a moderate impairment in relating to other people, no limitation in understanding simple instructions or carrying out instructions under ordinary supervision, and a moderate impairment in sustaining work performance" persuasive because it is supported by Keyes's examination of plaintiff and consistent with the medical records.[98]  Specific support cited was plaintiff's examine noting "no unusual or inappropriate behaviors, . . . pleasant attitude and demeanor, adequate insight and judgment, grossly intact remote and immediate memory, and . . . [ability] to focus and maintain attention to basic tasks during evaluation, recall two of three words after a delay, and perform serial threes with one error[.]"[99]  Consistency was found in treatment notes reflecting "deficits in mood with irritability and anxiety, fair to good concentration, no deficits in memory, no hallucinations, and fair impulse control[.]"[100]

In contrast, the ALJ found the opinions of Drs. Nixon and Hoier unpersuasive.

---

[95] *Id.* (citations omitted).
[96] *Id.* (citations omitted).
[97] *Id.* (citations omitted).
[98] *Id.* (citations omitted).
[99] Tr. at 22-23 (citations omitted).
[100] Tr. at 23 (citations omitted).

Dr. Nixon's opinion of the disabling degree of plaintiff's limitations was not supported by treatment notes from Center for Mental Wellness which reflected "deficits in mood with irritability and anxiety, fair to good concentration, no deficits in memory, no hallucinations, and fair impulse control[.]:[101]  The ALJ also found Nixon's opinion was inconsistent with the Keyes's findings of plaintiff's behaviors, attitude, attention, etc., recited above.[102]  The ALJ likewise found Hoier's opinions of disabling limitations unpersuasive as unsupported by her treatment notes that reflected "deficits in mood with irritability and anxiety, fair to good concentration, no deficits in memory, no hallucinations, and fair impulse control[,]" and inconsistent with Keyes's report.[103]

The ALJ concluded his RFC for plaintiff was an accurate reflection of his ability to perform work-related activities based on support from "the objective diagnostic exams, the treatment and examination notes, the frequency and type of treatment received, the claimant's responsiveness to treatment, the testimony of the claimant, and the opinions of the consultative examiner and state agency medical consultants[.]"[104]

The court agrees and finds the ALJ's RFC is supported by substantial evidence. Also, because the ALJ found that the opinions of Drs. Nixon and Hoier *were not* persuasive, much less equally persuasive as those of the state agency psychiatric consultants and Keyes, he was not required to consider the additional factors listed in 20 C.F.R. §§ 416.920c(c)(3)-(5) as plaintiff suggests.  Moreover, although the ALJ's discussion of plaintiff's treatment notes is not as extensive as that set forth in plaintiff's

---

[101] *Id.* (citations omitted).
[102] *Id.* (citations omitted).
[103] *Id.* (citations omitted).
[104] *Id.*

briefing, the Third Circuit has not required the ALJ to "make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records," so long as the reviewing court can discern the basis of the decision.[105] Here, the court finds the basis of the ALJ's determination with regard to the treatment notes of plaintiff's treating physicians is discernable.

Viewing the record as a whole, the court finds the ALJ applied the correct legal standards and that his decision is supported by substantial evidence.

## IV.     CONCLUSION

For the reasons discussed above, plaintiff's motion for summary judgment (D.I. 12) is DENIED, and defendant's cross-motion for summary judgment (D.I. 16) is GRANTED.

An order consistent with the findings in this Memorandum shall follow.

March 20, 2023                                    /s/  Mary Pat Thynge
                                                CHIEF U.S. MAGISTRATE JUDGE

---

[105] *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001); *See also*, *e.g.*, *Robinson v. Colvin*, 137 F. Supp. 3d 630, 645 (D. Del. 2015) (An ALJ's failure to cite specific evidence does not establish that the ALJ failed to consider it.) (citing *Black v. Apfel*, 143 F. 3d 383, 386 (8th Cir. 1998)).